**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNIVERSAL INSURANCE COMPANY, *et al.*, | |
| **Plaintiffs**, | |
| **v.** | **CIVIL NO.** 11-1968 (FAB) |
| DEPARTMENT OF JUSTICE, *et al.*, | |
| **Defendant.** | |

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is the motion to dismiss filed by defendants Commonwealth of Puerto Rico, the Department of Justice of the Commonwealth of Puerto Rico, and, in his official capacity as Attorney General, Guillermo Somoza-Colombani (collectively, "defendants"). (Docket No. 48.)  For the reasons set forth below, defendants' motion to dismiss is **DENIED** in part and **GRANTED** in part.

**DISCUSSION**

**I.   Background**

On July 12, 2011, the Commonwealth of Puerto Rico Legislative Assembly ("the legislature") passed Public Law No. 119, known as the Uniform Seizure and Forfeiture Act of 2011 ("Law 119"). Law 119 establishes the rules that govern all asset forfeiture procedures in Puerto Rico.  (Docket No. 26-1 at p. 1.)  Law 119

repealed Public Law No. 93 of 1988 ("Law 93"), which "granted
certain Commonwealth instrumentalities the authority to seize
assets used for illegal purposes." Id. According to the Puerto
Rico legislature, the main reason for enacting Law 119 is that
"multiple amendments and judicial constructions . . . have caused
confusion in the implementation of [Law 93]." Id. Therefore, Law
119 was passed allegedly to "clarif[y] the requirements that each
person must meet to challenge a seizure." Id. Notably, Law 119
changes the requirements for who can challenge a forfeiture. Id.
Specifically, Article 15 of Law 119 provides that "persons notified
as provided in this Act and who demonstrate they are the *owners* of
the property" may challenge the seizure (emphasis added). (Docket
No. 26-1 at p. 7.) An owner is "the individual who exercised
dominion and control over the property in question before it was
seized." Id. at p. 2. Article 16 then states that:

> "the plaintiff [who challenges a seizure] shall have the
> right to furnish a guaranty in favor of the Commonwealth
> of Puerto Rico . . . for the sum of the appraisal of the
> seized property within twenty (20) days after the
> complaint challenging the seizure is filed." Id. at
> p. 7-8.

Law 119 also allows insurance companies to challenge automobile
seizures, but only on behalf of the owners. Specifically,
Article 16 states that:

> "In the case of motor vehicles whose insurance policy
> includes a seizure endorsement, the insurance company may

only file a complaint challenging the seizure *on behalf of the owner of the vehicle*, for which it shall have to furnish the guaranty provided in this article (emphasis added).  Id. at p. 8.

Plaintiffs Universal Insurance Company, MAPFRE PRAICO Insurance Company, and Cooperativa de Seguros Multiples de Puerto Rico (collectively, "plaintiffs") are licensed by the Office of the Insurance Commissioner to operate as insurance carriers in Puerto Rico.  (Docket No. 53 at p. 1.)  Plaintiffs provide insurance coverage to banks and other financial institutions that finance the purchase of automobiles.  (Docket No. 10 at ¶ 14.)  Most vehicles purchased in Puerto Rico are financed; some vehicles are leased. (Docket No. 53 at p. 1.)  When a financial institution finances a vehicle, it may register its lien on the license and title of the vehicle with the Department of Transportation and Public Works. Id.  Financial institutions may require an insurance policy to finance vehicles.  Id.  Plaintiffs state that they issue those insurance policies to cover a number of risks, including asset forfeiture.  (Docket No. 10 at ¶¶ 9-11, 15.)  They also assert that when an insured vehicle is seized and then forfeited to the Puerto Rico government, plaintiffs will pay the financial institutions pursuant to their insurance contracts.  Id. at ¶ 16.  Then, plaintiffs allegedly have the right to subrogation where "the insurer is placed in the same legal position as the bank or

financial institution that financed the vehicle and is entitled to recover the balance owed to the bank by the proprietor." Id.

On September 30, 2011, plaintiffs filed a complaint for declaratory judgment and permanent injunction. (Docket No. 1.) On October 25, 2011, plaintiffs filed a verified amended complaint against all defendants. (Docket No. 10.) In their amended complaint, plaintiffs seek a declaratory judgment to declare Law 119 unconstitutional. Id. at ¶¶ 38 and 49. Plaintiffs argue that Law 119 prevents them from exercising their right to subrogation pursuant to their insurance policies with the financial institutions and thus, that Law 119 removes their right to challenge automobile seizures. Id. at ¶ 36. Plaintiffs request that defendants be permanently enjoined from enforcing Law 119 because Law 119 violates rights guaranteed by the United States Constitution. Id. at ¶ 66. They assert that Law 119 violates the Takings Clause and Due Process under the Fifth and Fourteenth Amendments, and the Ex Post Facto and the Contract Clauses under Article I Section 10 of the United States Constitution. Id. at ¶¶ 38 and 49.

On November 22, 2011, defendants filed a motion to dismiss, (See Docket No. 48), alleging that under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") plaintiffs fail to state a claim upon which relief can be granted. Defendants argue that

plaintiffs 1) have no property interest in the forfeited vehicles and no injury - economic or otherwise - and therefore, have no standing to challenge the constitutionality of the statute, 2) fail to state a claim under the Takings Clause, 3) fail to state a claim for a Due Process violation, 4) fail to state a claim under the Ex Post Facto Clause, and 5) fail to state a claim under the Contract Clause.  Id.  The Court will consider each argument in turn.

On November 25, 2011, plaintiffs filed an opposition to defendants' motion to dismiss.  (See Docket No. 52.)  Plaintiffs argue that defendants "misinterpret" plaintiffs' arguments regarding the Takings Clause and Due Process, id. at p. 2 and 8, and re-assert that they have stated a claim for an Ex Post Facto Clause violation and for a Contract Clause violation, id. at p. 9.

## II.  Rule 12(b)(6) Motion to Dismiss Standard

Rule 12(b)(6) allows the Court to dismiss a complaint when it fails to state a claim upon which relief can be granted.  When considering a motion under Rule 12(b)(6), a "court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom . . ." R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011).  When faced with a

motion to dismiss, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Id. at 12 (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009)).   Any "[n]on-conclusory factual allegations in the complaint [,however,] must . . . be treated as true, even if seemingly incredible." Id. (citing Iqbal, 129 S.Ct. at 1951).  Where those factual allegations "'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Id. (quoting Iqbal, 129 S.Ct. at 1949).  Furthermore, a court may not "attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if . . . a recovery is very remote and unlikely'." Id. at 13 (citing Bell Atlantic Corp v. Twombly, 550 U.S. 544, 556 (2007)).  The relevant inquiry, therefore, "focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id. at 13.

According to Rule 12(b)(6), a court will base its determination solely on the material submitted as part of the complaint or central to it.  Fudge v. Penthouse Int'l. Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988).  Generally, "a court may not consider documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into

one for summary judgment." Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).  "When . . . a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged), [however,] that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."[1]  Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (internal citation omitted).  This is especially true where the plaintiff has "actual notice . . . and has relied upon these documents in framing the complaint." Watterson v. Page, 987 F.2d 1, 4 (1st Cir. 1993).

## III. Standing

The Court must first address defendants' contention that plaintiffs lack standing to challenge the constitutionality of Law 119.  "Article III of the United States Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" Valley Forge Christian Coll. v. Ams. United

---

[1] In their opposition to motion to dismiss, plaintiffs stated that they "hereby adopt by reference the arguments included in their 'Reply to Response to Motion for Preliminary Injunction,' at docket number 30." (Docket No. 52 at p. 1.)  The Court, however, has decided not to convert defendants' motion to dismiss into one for summary judgment.  Therefore, the Court will not consider any arguments or facts outside of the complaint or any documents not expressly incorporated into it.

for Separation of Church & State, 454 U.S. 464, 471 (1982).  A

crucial part of the case and controversy limitation on the power of

federal courts is the requirement that a plaintiff must have

standing to invoke federal jurisdiction.  Id. at 471-73.

"[S]tanding is a threshold issue" and determines "whether the court

has the power to hear the case, and whether the putative plaintiff

is entitled to have the court decide the merits of the case."

Libertad v. Welch, 53 F.3d 428, 436 (1st Cir. 1995) (internal

citation omitted).  Therefore, if a plaintiff lacks standing to

bring a matter to federal court, the court lacks jurisdiction to

decide the merits of the case and must dismiss the complaint.

United States v. AVX Corp., 962 F.2d 108, 113 (1st Cir. 1992).

To establish Article III standing, plaintiffs must show that

they have a "personal stake in the outcome" of the claim asserted

by meeting a three-part test.  Pagan v. Calderon, 448 F.3d 16, 27

(1st Cir. 2006) (citing Baker v. Carr, 369 U.S. 186, 204 (1962)).

(internal citations omitted).  Id.  They must show (1) "a concrete

and particularized injury in fact, (2) a causal connection that

permits tracing the claimed injury to defendant's actions, and

(3) a likelihood that prevailing in the action will afford some

redress for the injury."  Weaver's Cover Energy, LLC v. R.I.

Coastal Res. Mgmt. Council, 589 F.3d 458, 467 (1st Cir. 2009)

(internal quotation marks omitted).

The Supreme Court has held that the party invoking federal jurisdiction bears the burden of establishing these elements. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (internal citations omitted).  "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation."  Id. (internal citations omitted).  Thus, at the pleading or motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," because "[the courts] presum[e] that general allegations embrace those specific facts that are necessary to support the claim."  Id. (internal citation omitted).

Defendants argue that plaintiffs have no property interest, either "as innocent third parties [or] as interested parties with property interest in the motor vehicles."  (Docket No. 48 at p. 7.) Therefore, defendants contend that plaintiffs' economic interests

are not at stake and no real injury is present.[2]  Id. at p. 11.
This "speculative injury," defendants state, "is not traceable to
the letter of Act 119." Id. at p. 11.  Therefore, they argue that
the Court should dismiss the case for lack of subject matter
jurisdiction.   Id.   The Court finds defendants' arguments
unpersuasive.

Plaintiffs do not need to prove that they have a property
interest at the motion to dismiss stage.  They only need to state
"general factual allegations" to establish that they have standing.
Lujan, 504 U.S. at 561.  Plaintiffs have sufficiently alleged that
they have a "personal stake in the outcome" of the claims asserted.
First, they have stated general factual allegations of a concrete
and particularized injury.  Plaintiffs have stated that they have
subrogation rights to the liens that are registered on the license
and title of forfeited vehicles.  (Docket No. 10 at ¶ 16.)
Plaintiffs allege that they have personally suffered an injury

---

[2] Defendants also argue that "only the person toward whom the state
action was directed, and not those incidentally affected, may
maintain a section 1983 claim."  (Docket No. 48 at p. 6.)
Defendants are unclear as to which section 1983 they are referring
to but cite to a case in this district that addresses civil rights
claims that were brought pursuant to 42 U.S.C. § 1983.  Id.
Defendants also make arguments regarding section 1983 in other
sections of their motion to dismiss. (See, e.g., Docket No. 48 at
p. 13.)  Plaintiffs do not indicate in their amended complaint,
however, that they are bringing their claims pursuant to 42 U.S.C.
§ 1983. (See Docket No. 10.)

because Law 119 prevents them from challenging any forfeiture on their own behalf.  (See Docket No. 52 at p. 8-9.)  Furthermore, plaintiffs have sufficiently alleged that they will suffer an economic injury because they have to pay out insurance claims but cannot recuperate their losses because of Law 119.  (Docket No. 10, ¶¶ 59-60); see Lujan, 504 U.S. at 582 (discussing how "an economic interest" often is sufficient to confer standing).  Second, plaintiffs have stated general factual allegations of a causal connection that permits tracing the claimed injury to defendants' actions.  Plaintiffs allege that the enactment of Law 119 and its enforcement is what will cause them their injury.  (See Docket No. 10.)  Indeed, the text of Law 119 specifically disallows plaintiffs from challenging any forfeiture on their own behalf. (Docket No. 26-1 at p. 8.)  Finally, plaintiffs have stated general factual allegations of the likelihood that prevailing in the action will afford some redress for the injury.  If plaintiffs receive their requested relief - a declaratory judgment and injunction - then defendants will be prevented from enforcing Law 119 and therefore, plaintiffs will be able to contest forfeitures on their own behalf.

    Additionally, defendants cite Puerto Rico Supreme Court opinions that allegedly support their claim.  Defendants fail to file, however, certified English translations of such authority

pursuant to the Local Rules of this Court.    See D.P.R.
Loc.Civ.R. 5(g) ("All documents not in the English language which
are presented or filed, whether as evidence or otherwise, must be
accompanied by a certified translation into English prepared by an
interpreter certified by the Administrative Office of the United
States Courts."); cf. 48 U.S.C. § 864 ("All pleadings and
proceedings in the United States District Court for the District of
Puerto Rico shall be conducted in the English language.").
Therefore, the Court will not consider this authority until
defendants file certified English translations.    See Puerto Ricans
for Puerto Rico Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008)
("Where a party makes a motion to dismiss based on a decision that
was written in a foreign language, the party must provide the
district court with and put into the record an English translation
of the decision.").

        In their motion to dismiss, defendants argue in a footnote
that they have not submitted certified translations of the Puerto
Rico Supreme Court cases cited in their motion because the "purpose
of citing these cases is to have the Court take judicial knowledge
of the jurisprudence set forth therein, not as evidence or to
establish any facts." (See Docket No. 48 at p. 9.) They further
contend that the First Circuit Court of Appeals held that "this is
a proper course of action and that certified translations may be

Civil No. 11-1968 (FAB)                                          13

filed if and when the case goes on appeal." Id.  Defendants rely

on Berrios-Romero v. Estado Libre Asociado de Puerto Rico to

support their contentions.  641 F.3d 24, 26-27 (1st Cir. 2011).

This argument is unavailing.   The plaintiff in Berrios-Romero

argued that the First Circuit Court of Appeals should ignore an

English translation of a relevant Puerto Rico decision because it

was not put into the record until the appeal.  The Berrios-Romero

court held that it can take judicial notice of law at any time and

found that it was unnecessary to ignore an English translation

"simply to punish the derelictions of district court counsel" when

appellate counsel has remedied the error.  641 F.3d at 28.  The

Berrios-Romero court's holding, therefore, focuses on whether the

court   should   consider   an   already-filed   certified   English

translation  and  not  whether  it  was  proper  for  certified

translations to be filed on appeal.  Because defendants have not

demonstrated that plaintiffs' factual allegations are insufficient

to meet standing requirements, the Court finds that plaintiffs pled

sufficient information to demonstrate that they have standing.

**IV.  Discussion**

    **A.   Plaintiffs' Takings Claim**

       Defendants argue that plaintiffs fail to state a claim

for a violation of the Takings Clause of the Fifth Amendment to the

United States Constitution.  (See Docket No. 48 at p. 14.)   The

Takings Clause provides that:  "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V.  Defendants argue that there is no physical taking.  Id. at pp. 12-15.  Even if there were a taking, defendants argue, there is just compensation "since the Commonwealth returns the vehicles or pays the amount of the assessment of said property plus the interest accumulated since the seizure."  Id. at p. 15.  Plaintiffs respond, however, that there are no grounds for "the State . . . to take away the property interests of a party with a recorded lien and make it their own property, without just compensation." (Docket No. 52 at p. 8.)  The Court finds plaintiffs' arguments unpersuasive.

        The Supreme Court has held that an *in rem* forfeiture of property involved in criminal activity is not a taking for which just compensation is required.  See Bennis v. Michigan, 516 U.S. 442, 452 (1996) (forfeiture of car used in prostitution was not a taking and "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."); Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 680-90 (1974).  Other circuit courts, including the First Circuit Court of Appeals, have also followed suit and have held that seizures pursuant to civil forfeiture statutes are not takings

under the Fifth Amendment to the United States Constitution but
rather, an exercise of the government's police power.  See, e.g.,
Acadia Tech., Inc. v. United States, 458 F.3d 1327, 1331 (Fed. Cir.
2006) ("When property has been . . . subjected to in rem forfeiture
proceedings, such deprivations are not 'takings' for which the
owner is entitled to compensation."); U.S. v. $7,990.00 in U.S.
Currency, 170 F.3d 843, 845-846 (8th Cir. 1999) (" . . . [t]he
forfeiture of contraband is an exercise of the government's police
power, not its eminent domain power.  A forfeiture is not subject
to the Fifth Amendment's Takings Clause when it deprives an
innocent owner of his property."); United States v. One Parcel of
Real Property with Buildings, Appurtenances, and Improvements,
Known as Plat 20, Lot 17, Great Harbor Neck, New Shoreham, R.I.,
960 F.2d 200, 210 (1st Cir. 1992) ("We think it is settled that if
the federal government's actions comport, procedurally and
substantively, with the terms of a lawfully enacted forfeiture
statute, it may seize private property without compensating the
owner.")

        Therefore, because the Supreme Court and the First
Circuit Court of Appeals have specifically held that forfeitures
are not takings under the Fifth Amendment of the United States
Constitution, plaintiffs' claim that Law 119 violates the Takings

Clause fails.  Accordingly, defendants' motion to dismiss for failure to state a claim under the Takings Clause is **GRANTED.**

### B.   Plaintiffs' Due Process Claim

Plaintiffs also claim that Law 119 fails to meet minimal procedural due process requirements under the United States Constitution.  The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that substantive rights, life, liberty, and property, "cannot be deprived except pursuant to constitutionally adequate procedures." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). "Due Process claims may take either of two forms:  'procedural due process' or 'substantive due process.'" Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir. 1991). Defendants argue that plaintiffs do not establish either a substantive due process or a procedural due process claim.  (See Docket No. 48 at p. 15-16.)  Plaintiffs assert, however, that their

complaint only addresses procedural due process violations.[3]  (See

Docket No. 52 at p. 8.)  The Court, therefore, does not evaluate

any substantive due process claims. With regard to the plaintiffs'

claim for a procedural due process violation, the Court finds that

plaintiffs have alleged sufficient facts to state a claim.

To establish a procedural due process claim, plaintiffs

must show that 1) they had a liberty or property interest, and

2) that defendants deprived them of that interest without a

constitutionally adequate process.  Logan v. Zimmerman Brush Co.,

455 U.S. 422, 428 (1982); Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d

1, 13 (1st Cir. 2011) (internal citation and quotation marks

omitted); PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 30 (1st

Cir. 1991).

_____

[3] Plaintiffs' amended complaint is vague as to exactly which
claims they are establishing under which constitutional
provisions.  Plaintiffs state that "procedural due process
requires pre-seizure notice and an opportunity to be heard."
(Docket No. 10 at ¶ 40.)  This seems to be a procedural due
process claim under the Due Process Clause of the Fourteenth
Amendment; immediately after plaintiffs' statement about
procedural due process, however, they cite the Fifth Amendment
and discuss the Takings Clause.  Id. at ¶ 41.  Plaintiffs have
argued, however, that Law 119 "must be declared invalid under the
Fifth and Fourteenth Amendments . . . ."  Id. at ¶ 47.
Furthermore, defendants also address plaintiffs' arguments under
the Due Process Clause of the Fourteenth Amendment.  (See Docket
No. 48 at p. 16.)  Plaintiffs do not dispute this analysis by the
defendants and state in their opposition to defendants' motion to
dismiss that "plaintiffs' complaint is based on lack of
procedural due process only."  Thus, the Court will also analyze
the claim as an alleged procedural due process violation.

### 1.  Deprivation of Property

To have a constitutionally protected property interest, "a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972); see also Coyne v. City of Somerville, 972 F.2d 440, 443 (1st Cir. 1992).  Property interests are not created by the Constitution; instead, "they are created . . . by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Roth, 408 U.S. at 577.

Defendants argue that because plaintiffs have no property interest, the Court must dismiss the due process claim. (Docket No. 17 at p. 22.)  They argue that the only property affected by Law 119 is the seized automobile and that plaintiffs are not the owners of the property.  Id.  Instead, defendants contend that plaintiffs only have a "conditional creditor" status through subrogation of the financial institutions' rights pursuant to plaintiffs' insurance policy contracts with the institutions. (See Docket No. 48 at p. 9.)  To support that they have a constitutionally protected property interest, however, plaintiffs

state and defendants agree that when a financial institution
finances a vehicle, it may register its lien on the licenses and
title of the vehicle with the Department of Transportation and
Public Works.  (See Docket Nos. 10 at ¶ 14 and 53 at p. 1.)
Defendants argue that these facts are not sufficient to demonstrate
a property interest in Puerto Rico.  (See Docket No. 48 at p. 9.)
Defendants cite Puerto Rico Supreme Court authority that allegedly
supports their argument but have not filed any certified English
translations of the cited opinions pursuant to Local Rule 5(g).
("All documents not in the English language which are presented or
filed, whether as evidence or otherwise, must be accompanied by a
certified translation into English prepared by an interpreter
certified by the Administrative Office of the United States
Courts."); cf. 48 U.S.C. § 864 ("All pleadings and proceedings in
the United States District Court for the District of Puerto Rico
shall be conducted in the English language.").  As with defendants'
arguments regarding standing, the Court will not consider this
authority until defendants file certified English translations.
See Dalmau, 544 F.3d at 67 (1st Cir. 2008) ("Where a party makes a
motion to dismiss based on a decision that was written in a foreign
language, the party must provide the district court with and put
into the record an English translation of the decision.").
Therefore, because defendants have not demonstrated that

plaintiffs' factual allegations are insufficient to state a property interest in Puerto Rico, the Court finds at this time that plaintiffs have pled sufficient information to suggest that they have a property interest in the seized vehicles.

### 2.   Constitutionally Adequate Process

"[D]ue process ensures that government, when dealing with private persons, will use fair procedures." Depoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005). "An essential principle of due process is that a deprivation of life, liberty, or property be preceded[4] by notice and opportunity for hearing appropriate to the nature of the case." Loudermill, 470 U.S. at 542 (internal citation and quotation marks omitted). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Bibiloni

---

[4] Defendants argue that "'pre-seizure notice and hearing are not required by due process in the context of forfeitures,'" and therefore, that plaintiffs' pre-seizure and forfeiture due process claim should be dismissed with prejudice. (Docket No. 48 at p. 17) (citing Calero-Toledo, 416 U.S. at 677). The Court agrees with defendants that *pre*-seizure and *pre*-forfeiture notice and hearing are not required (emphasis added). The Calero-Toledo Court emphasized in its holding, however, that notice and hearing are still required, even though it may occur after seizure. See 416 U.S. at 679-80 (" . . . we hold that this case presents an 'extraordinary' situation in which postponement of notice and hearing until after seizure did not deny due process"). Therefore, the Court will focus on plaintiffs' and defendants' arguments about whether plaintiffs state a claim for procedural due process regarding *post*-seizure actions under Law 119 (emphasis added).

Del Valle de Puerto Rico, 661 F. Supp. 2d 155, 182 (D.P.R. 2009) (internal citations and quotation marks omitted).

Defendants argue that even assuming that plaintiffs have a property interest in the forfeited vehicles, Law 119's procedure for the insurance companies to challenge the forfeiture and to recover the vehicle provides constitutionally adequate process.  (See Docket No. 48 at p. 18.)  Plaintiffs respond that under this procedure, however, insurance companies may challenge the forfeiture only on behalf of the owner; they cannot challenge the forfeiture "on their own to defend their own rights and property interest."  (See Docket No. 52 at p. 8-9.)  Defendants have not cited any authority demonstrating that this procedure satisfies the "opportunity to be heard" in order to meet the requirement of constitutionally adequate process.  At this stage, without more guidance from the parties on this issue, the Court finds that plaintiffs have sufficiently pled facts to show that they have been deprived of constitutionally adequate process.

The Court, therefore, will not at this juncture dismiss plaintiffs' procedural due process claim.  Accordingly, defendants' motion to dismiss plaintiffs' claims for procedural due process violations is **DENIED**.

### C.   Plaintiffs' Ex Post Facto Claim

Plaintiffs also claim that Law 119 violates the Ex Post
Facto Clause of the United States Constitution.   Article I,
Section 9 of the United States Constitution, commonly known as the
Ex Post Facto Clause, forbids Congress from enacting a "bill of
attainder or ex post facto law."   U.S. Const. art. I, § 9, cl. 3.
Article I, Section 10[5] of the United States Constitution prohibits
states from doing the same under the Ex Post Facto Clause.   While
"ex post facto" is defined as "done or made after the fact; having
retroactive force or effect," see Black's Law Dictionary 661 (9th
ed. 2009), the Supreme Court has limited the application of the Ex
Post Facto Clause to criminal laws.[6]   See Calder v. Bull, 2 U.S.
386, 390 (1798) (discussing how the Ex Post Facto Clause applies
exclusively to the retroactivity of criminal or penal legislation);
see also Smith v. Doe, 538 U.S. 84, 92, (2003) (finding that the Ex
Post Facto Clause does not apply to a sex offender registration and
notification statute because the statute was a civil sanction and
not a criminal one); Kansas v. Hendricks, 521 U.S. 346, 369 (1997)

---

[5] "No State shall . . . pass any . . . ex post facto Law."   U.S.
Const., art. I, § 10, cl. 1.   Even though Puerto Rico is not a
state, defendants do not contest that the Ex Post Facto Clause
binds Puerto Rico.

[6] In its definition of "ex post facto law," Black's Law Dictionary
also states that "retrospective civil laws may be allowed."   See
Black's Law Dictionary 661 (9th ed. 2009).

(holding that a state's civil commitment statute did not implicate the Ex Post Facto Clause because it was not punitive and not a criminal proceeding).  Therefore, when analyzing an Ex Post Facto Clause claim, the Court must first ask whether the challenged law constitutes a civil, regulatory measure or a criminal, punitive one.  Smith, 538 U.S. at 92.  If the legislature intended to impose punishment, then the inquiry ends.  Smith, 538 U.S. at 92.  If "the [legislature's] intention [,however,] was to enact a regulatory scheme that is civil and nonpunitive," then the Court must determine whether the "statutory scheme was so punitive either in purpose or effect as to negate that intention to deem it civil."  Simmons v. Galvin, 575 F.3d 24, 44 (1st Cir. 2009) (quoting United States v. Ward, 448 U.S. 242, 248-49 (1980)).  Generally, a court will defer to the legislature's stated intent and "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty."  Smith, 538 U.S. at 92 (internal citations omitted).

### 1.    The Legislature's Intent as to Whether the Forfeiture Statute is Civil or Criminal

To determine whether a law is civil or criminal, the Court must "ascertain whether the legislature intended for the statute to establish 'civil' proceedings."  Smith, 538 U.S. at 92 (2003) (quoting Kansas, 521 U.S. at 361).  First, the Court must

construe the statute to examine its text and structure to determine

the legislative objective.   Id. (citing Flemming v. Nestor, 363

U.S. 603, 617 (1960)).   Evidence of the legislature's intent to

establish a civil measure exists if the legislature "indicated

either   expressly   or   impliedly   a   preference   [for   civil

proceedings]."   Hudson v. United States, 522 U.S. 93, 99 (1997).

         Plaintiffs have not stated any facts in their

amended verified complaint to show that the legislature intended to

impose a criminal law.   (See Docket No. 10.)   Furthermore,

defendants have filed a certified translation of Law 119, which

shows that the legislature expressly intended to impose a civil

measure.   (See Docket No. 26-1.)   Notably, the "Purposes Article"

of Law 119 states:

> "In our jurisdiction, forfeitures are a civil or *in rem*
> action, distinct and separate from any *in personam*
> action.   Forfeitures conducted by the State are based on
> the legal fiction that the thing is the primary offender.
> The *in rem* proceedings exist independently from the
> criminal proceedings of an *in personam* nature and are in
> no way affected by same.   Civil forfeiture proceedings
> may be conducted and concluded before a person is
> accused, declared guilty or absolved.   In fact, they may
> be conducted even when no charges have been filed.   This
> is due to the fact that the civil action is aimed at the
> thing itself; generally, the guilt or innocence of the
> owner is irrelevant in regards to the legitimacy or
> illegitimacy of the civil forfeiture.   Goldsmith-Grant
> Co. v. United States, 254 U.S. 505 (1921).   Calero-Toledo
> v. Pearson Yacht Leasing Co., 416 U.S. 663 (1974).
> United States v. One Assortment of 89 Firearms, 465 U.S.
> 354 (1984)."   (Id. at p. 2, translation provided by
> defendants.)

Therefore, plaintiffs have failed to show facts indicating that the legislature intended to establish a criminal or punitive measure. The defendants have shown, however, that the legislature expressly intended to impose a civil, not criminal, measure.

### 2.   Clear Proof to Override Legislative Intent to Impose Civil Measure

Because the legislature stated that its intent was to enact a civil and nonpunitive law, the Court must then determine whether the statute was so punitive as to negate the intention to make it civil. Simmons, 575 F.3d at 44 (1st Cir. 2009). Generally, the Court will defer to the legislature's stated intent and "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Smith, 538 U.S. at 92 (internal citations and quotations omitted). When analyzing the purpose or effect of a statutory scheme, the non-exclusive and non-dispositive factors test set forth in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963) are useful guideposts. See Smith, 538 U.S. at 97; see also Simmons, 575 U.S. at 44. The factors are: "1) whether the sanction involves an affirmative disability of restraint; 2) whether it has historically been regarded as punishment; 3) whether it comes into play only on a finding of scienter; 4) whether its operation will promote the traditional aims of

punishment-retribution and deterrence; 5) whether the behavior to
which it applies is already a crime; 6) whether there is a rational
connection to a nonpunitive purpose; and 7) whether it appears
excessive in relation to the alternative purpose assigned."  Id.
(citing Mendoza-Martinez, 372 U.S. at 168-69).  Whether a law is
"so punitive in fact" as to violate the ex post facto prohibition,
however, is a highly context-specific matter.  See Flemming, 363
U.S. at 617.  Sometimes one factor will be dispositive of whether
a law is punitive and other times, a different factor will be
crucial to whether a law is punitive for ex post facto purposes.
See, e.g., Ward, 448 U.S. at 259-60 (discussing only one commonly
considered factor); United States v. Usery, 518 U.S. 267, 268-69
(1996) (finding that forfeiture is civil by focusing only on the
facts that forfeitures are historically considered to be civil and
that forfeitures do not require a finding of scienter); see also
Doe v. Pataki, 120 F.3d 1263, 1272-76 (2d Cir. 1997) (discussing
various Supreme Court opinions that found different factors to be
dispositive).

        Plaintiffs fail to present any arguments or facts
regarding these factors to negate the legislature's stated intent,
and therefore, waive these arguments.  See United States v.
Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in
a perfunctory manner, unaccompanied by some effort at developed

argumentation, are deemed waived"). Instead, plaintiffs'
statements "merely parrot" what is required to show an ex post
facto law. Ocasio-Hernandez, 640 F.3d at 12 (quoting Ashcroft v.
Iqbal, 556 U.S. 662 (2009)). In their verified amended complaint,
plaintiffs cursorily assert that forfeiture statutes are penal
because they are "quasi-criminal procedures" and all Fourth
Amendment, Fifth Amendment, and Fourteenth Amendment protections
are applicable to them. (Docket No. 10 at ¶ 27.) They also
contend that forfeiture statutes are penal "since by design, they
are enacted to punish a criminal conduct" and that frequently, an
asset forfeiture is related to a "criminal action against [the
asset's] owner." (Docket No. 10 at ¶ 45.) Plaintiffs provide no
other facts to support their conclusion that forfeiture statutes
are penal in their verified amended complaint. (See Docket
No. 10.)

          Even if plaintiffs presented facts in regards to
these factors, the Court finds that plaintiffs' claim that Law 119
violates the Ex Post Facto Clause fails. The Court finds that an
analysis of the Mendoza-Martinez factors strongly suggest that the
purpose of Law 119 is, indeed, civil and not criminal. With regard
to the first factor, the statute does not impose any affirmative
disability or restraint, "physical or otherwise." Simmons, 676
F.3d at 44. The First Circuit Court of Appeals has stated that

"imprisonment . . . is the paradigmatic affirmative disability or restraint." Id. (quoting Smith, 538 U.S. at 100).  With regard to the second factor, the Supreme Court and the First Circuit Court of Appeals have noted the "historic civil nature of forfeiture statutes" and "ha[ve] repeatedly refused to limit [the forfeiture statutes'] application by imposing the full range of constitutional protections usually associated with criminal sanctions." $250,000 in U.S. Currency, 808 F.2d at 900. With regard to the third factor, Law 119's effectiveness does not depend on a finding of scienter: forfeiture may occur with or without the government demonstrating scienter.  With regard to the fourth, sixth, and seventh factors, while forfeiture does serve as a deterrent, (see Docket No. 26-1, p. 1), the Supreme Court has stated that deterrence in civil forfeiture statutes may serve civil as well as criminal goals.  See Usery, 518 U.S. at 292; see also Calero-Toledo, 416 U.S. at 668 n. 26 ("Seizure and forfeiture statutes also help compensate the Government for its enforcement efforts and provide methods for obtaining security for subsequently imposed penalties and fines.") Furthermore, the "Purposes Article" of Law 119 states valid civil goals.  (See Docket No. 26-1 at p. 1.)  Law 119 aims to establish a "speedy, fair and uniform procedure" for asset forfeiture and to prevent "the seized property from deteriorating due to passage of time." Id.  The statute does not appear excessive in relation to

the alternative civil purposes, because Law 119 is modeled after
federal forfeiture statutes that have been deemed civil.  (See
Docket 10 at ¶ 44.)  With regard to the fifth factor, while an
alleged crime must have occurred to trigger the forfeiture of an
asset, a civil forfeiture is an *in rem* action that is "aimed at the
thing itself." (See Docket No. 26-1, p. 2.)  The forfeiture exists
independently from any criminal proceedings, and applies whether or
not the owner of the item is guilty or innocent.  The Supreme Court
has also stated that it is "'insufficient to render [a] statut[e]
punitive'" just because it may be "'tied to criminal activity.'"
Simmons, 676 F.3d at 45 (citing Usery, 518 U.S. at 291).[7]

        In addition, the Supreme Court and the First Circuit
Court of Appeals have already described similar federal forfeiture
statutes as civil in nature.  Plaintiffs argue, however, that "most
circuit courts of appeals have uniformly expressed that forfeiture
laws are penal in nature . . . ," but fail to point to any case law

---

[7] Although the Usery Court analyzed civil forfeiture statutes
with regards to the Double Jeopardy Clause, circuit courts of
appeals have held that the same analysis applies to whether
underlying statutes are criminal or penal for purposes of the Ex
Post Facto Clause.  See, e.g., United States v. Certain Funds
Contained in Account Numbers 600-306211-006, 600-306211-011 &
600-306211-014 Located at Hong Kong & Shanghai Banking Corp., 96
F.3d 20, 26 (2d Cir. 1996).  Furthermore, the Supreme Court also
implicitly approved the usage of one test for challenges to the
Double Jeopardy Clause and the Ex Post Facto Clause when it
undertook a single analysis to answer both constitutional
challenges.  See Hendricks, 521 U.S. at 370.

that supports their assertion.  (Docket No. 52 at p. 10.)

Plaintiffs then state that the First Circuit Court of Appeals has

specifically "determined that the ex post facto prohibition applies

to forfeiture procedures." Id. at p. 10.  They cite only one case,

United States v. One Parcel of Real Property, 395 F.3d 1 (1st Cir.

2004), to support this proposition. (Docket No. 52 at p. 10.)  The

One Parcel court, however, did not address any ex post facto claim;

instead, the court discussed how the forfeiture of real property

used to commit a drug offense was not grossly disproportional to

the gravity of the crime so as to violate the Excessive Fines

Clause of the Eighth Amendment.   Plaintiffs also ignore First

Circuit case law that is on point.   The First Circuit Court of

Appeals has stated that while the Supreme Court "has considered

forfeiture statutes as criminal for the purpose of protecting

certain fourth and fifth amendment rights, [the statutes] are

predominantly civil in nature."  United States v. $250,000 in

United States Currency, 808 F.2d 895, 900 (1st Cir. 1987).  The

First Circuit Court of Appeals has "rejected the argument that the

forfeiture provisions of 21 U.S.C. §§ 881 [,a federal forfeiture

law,] trigger the panoply of constitutional safeguards present in

criminal actions, reaffirming that this statute is 'predominantly

civil in nature.'" Id.; see also United States v. One 1974 Porsche

911-S Vehicle, 682 F.2d 283, 285 (1982) ("A forfeiture proceeding

is a civil, *in rem* action that is independent of any factually related criminal actions.").

Therefore, plaintiffs fail to state a claim for an Ex Post Facto Clause violation because they fail to state any arguments or facts to negate the legislature's stated intent. Furthermore, even if plaintiffs presented facts in regard to the Mendoza-Martinez factors, the Court finds that plaintiffs fail to state clear proof to override the legislature's stated intent to impose a civil measure. Plaintiffs ignore case law that is on point and fail to provide supporting facts or case law for their perfunctory arguments. Their claim that Law 119 is penal and that its retroactivity makes it an ex post facto law fails.

Therefore, to the extent that plaintiffs fail to state a claim that Law 119 violates the Ex Post Facto Clause of the United States Constitution, defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6) is **GRANTED** in part.

### D. Plaintiffs' Contract Clause Claim

The Contract Clause declares that: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I., § 10, cl. 1. The Contract Clause protects individuals and legal entities who have freely entered into contracts from legislative action that impairs the obligations under those contracts. See Rooker v. Fidelity Trust Co., 261 U.S.

114, 118 (1923).   To prevail on a Contract Clause claim, a plaintiff must meet a two-part test.   See Parker v. Wakelin, 123 F.3d 1, 4-5 (1st Cir. 1997).   The first inquiry is whether a "change in state law has resulted in the substantial impairment of a contractual relationship."   Parella v. Retirement Bd. of the Rhode Island Emp.'s Ret. Sys., 173 F.3d 46, 59 (1st Circ. 1999) (internal quotations and citations omitted).   If a substantial impairment is found, the Court must then address the second inquiry, which is "whether or not the impairment is nonetheless justified as reasonable and necessary to serve an important public purpose."   Parella, 173 F.3d at 59 (quoting United States Trust Co. v. New Jersey, 431 U.S. 1, 25 (1977)); see also Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 191 (1st Cir. 1999) (internal citations omitted) (". . . even a state law that creates a substantial impairment does not transgress the Contract Clause as long as it is appropriate for, and necessary to, the accomplishment of a legitimate public purpose.").

### 1.   Substantial Impairment

The first inquiry, whether a substantial impairment exists, is broken down into three elements:   (1) whether there is a contractual relationship, (2) whether a change in law impairs that contractual relationship, and (3) whether the impairment is substantial.   Id. (quoting General Motors Corp. v. Romein, 50 U.S.

181, 196 (1992)).  Whether an impairment is substantial requires a court to consider the parties' reasonable expectations to the alleged contract.  Mercado-Boneta v. Administracion del Fondo de Compensacion al Paciente, 125 F.3d 9, 13 (1st Cir. 1997).  Those expectations must be adjusted accordingly, however, when the parties are "operating in a heavily regulated industry," such as insurance, or when the parties can "readily foresee future regulation involving the subject matter of their contract."  Id. at 13-14.  Generally, the "severity of the impairment measures the height of the hurdle the state legislation must clear.  Minimal alteration of contractual obligations may end the inquiry at its first stage."  Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 245 (1978).  If there is severe impairment, however, then there must be "a careful examination of the nature and purpose of the state legislation."  Id.

          The Court finds that plaintiffs have pled sufficient facts to show that a substantial impairment exists.  First, plaintiffs have shown that contractual relationships exist between them and the financial institutions that they insure.  (See Docket No. 10 at ¶ 53; see also Docket Nos. 60-1 and 60-2.)  Second, plaintiffs have alleged that Law 119 impairs those contractual relationships because the law prevents plaintiffs from subrogating in the position of the financial companies to institute forfeiture

proceedings pursuant to their insurance contracts. (<u>See</u> Docket
No. 10, ¶¶ 59-60.)   Third, the plaintiffs allege that this
impairment is substantial because they may still be compelled to
pay claims by the financial institutions when forfeiture occurs but
cannot exercise their right to subrogate under the insurance
contract to appear in an asset forfeiture proceeding to mitigate
that loss.  <u>Id.</u>

      Defendants argue that when looking at this first
inquiry of whether or not a substantial impairment of a contractual
relationship has occurred, the Court should take note that the
insurance industry is "subject to a strict government regulation."
(<u>See</u> Docket No. 48 at p. 20.)   Defendants also argue that the
states have "a virtually exclusive domain over the insurance
industry" and therefore, have "broad authority to regulate the
insurance industry."  <u>Id.</u>  While it may be true that states have
broad authority to regulate the insurance industry, Law 119 is a
civil forfeiture statute and the purpose of the statute has nothing
to do with the regulation of the insurance industry.   The
particular type of regulation must still be foreseeable.   <u>See</u>
<u>Mercado-Boneta</u>, 125 F.3d at 9, n. 7 (discussing how the "Contract
Clause analysis would be enervated if the mere fact of regulation
meant there was always foreseeability of more regulation and thus
no substantial impairment").   The analysis might be different if

the purpose of the statute was specifically to regulate the insurance industry.  See id. at 14-15 (finding that a Puerto Rico statute abrogating a malpractice liability insurer, an entity created by Puerto Rico, and thus, barring claims against insurer, was not a substantial impairment of the insured physician's contract with the insurer); see also Energy Reserves Group, Inc. v. Kansas Power and Light Co., 459 U.S. 400, 416 (1983) (holding that a Kansas statute imposing certain regulations on oil and gas contracts did not impair existing contractual obligations between an oil company and a public utility).

### 2.   Reasonable and Necessary to Serve a Legitimate Public Purpose

Because the Court has determined that plaintiffs state sufficient facts to show a substantial impairment, the Court must address the second inquiry in the Contracts Clause analysis: whether the legislation is reasonable and necessary to serve a legitimate public purpose.

The Supreme Court has determined that "the State . . . must have a significant and legitimate public purpose behind a regulation [that is challenged under the Contracts Clause], such as remedying of a broad and general social or economic problem." Energy Reserves, 459 U.S. at 411-12.  The legitimate public purpose requirement "guarantees that the State is exercising its police

power, rather than providing a benefit to special interests." Id.
at 412.  Once a legitimate purpose has been identified, the Court
must still find that the legislation is reasonable and necessary to
achieve such a purpose.  See Houlton Citizens' Coalition, 175 F.3d
at 191.  "When the contracts at issue are private and no
appreciable danger exists that the governmental entity is using its
regulatory power to profiteer or otherwise serve its own pecuniary
interests," the Court "may defer to the legislature's judgment" and
need not assess the reasonableness or necessity of the impairing
regulation.  Id.; see also Mercado-Boneta, 125 F.3d at 16
(discussing how a legislative decision "deserves significant
deference because the state is essentially acting not according to
its economic interest, but pursuant to its police powers").  The
Supreme Court has warned, however, that "private contracts are not
subject to unlimited modification under the police power." United
States Trust Co., 413 U.S. at 22; Wakelin, 124 F.3d at 5 (when a
state's own self-interest is at stake, a state's decision about
necessity and reasonableness is given less deference).

        Drawing all reasonable inferences in plaintiffs'
favor, the Court finds that plaintiffs have stated sufficient facts
to suggest that Law 119 fails to address a legitimate public
purpose in a reasonable and necessary manner.  Defendants argue
that the only interest behind Law 119 is to "eliminate from the

market every property that is being used in the commission of a
crime and to expedite the forfeiture process" while "providing a
due process to the owner[8] of the motor vehicle." (Docket No. 48 at
p. 21.) Assuming that this stated interest is a "broad and general
social or economic problem," and therefore, a legitimate public
purpose, the Court must then address the reasonableness and
necessity of the regulation. See Energy Reserves, 459 U.S. at 411-
12. Plaintiffs argue that the regulation fails to serve reasonably
as punishment and fails to stop crime. (Docket No. 52 at p. 11.)
Instead, plaintiffs assert, the Puerto Rico government has an
economic interest in enacting Law 119. Id. Specifically,
plaintiffs state that the purported "owner" of a vehicle has not
paid in full for the car, and, thus, forfeiting the car does not
serve to punish the owner. Id. Therefore, plaintiffs argue that
forfeiting property with a "registered lien in favor of a third
party" without any way to recover the property is just a way for
the "government to enrich itself on the account of innocent third
parties." Id. Plaintiffs state several facts to bolster their
argument. First, plaintiffs indicate that as registered lien

---

[8] As previously mentioned, Law 119 states that "the definition of
owner of the property deals with the identity of the individual
who exercise dominion and control over the property in question
before it was seized." (See Docket No. 26-1 at p. 2.) This
definition, therefore, excludes those who have a registered lien
on the property.

holders, they can only "file a complaint in court challenging the forfeiture *on behalf of the owner of the vehicle*" (emphasis added). (<u>See</u> Docket No. 10 at ¶ 21.)   In addition, in order to even challenge the forfeiture on behalf of the owner, plaintiffs must post bond.  (<u>See</u> Docket 26-1 at p. 7-8.)   After the posting of a bond, plaintiffs must then show that they had "domain and control of the vehicle" during forfeiture in order to recover it.  (<u>See</u> Docket No. 10 at ¶ 23.)  Drawing the reasonable inference that in most cases, the insurance companies do not have "domain or control of the vehicle," it seems that they will rarely recover the vehicle or the bond that they posted.  Furthermore, it seems reasonable to draw the inference that most insurance companies and the purported "owners," as defined in Law 119, will not attempt to make a claim in forfeiture proceedings.   Thus, after viewing the facts in a light most favorable to the plaintiff, the Court finds that plaintiffs have stated sufficient facts to show that Law 119 does not address a legitimate public purpose in a reasonable and necessary manner.

        At the motion to dismiss stage, the Court need only find a plausible entitlement to relief in order for plaintiffs' contract clause claim to survive dismissal.   After drawing all reasonable inferences in plaintiffs' favor, we conclude that such

burden has been met.  These issues may be revisited, if warranted, at the summary judgment stage.

Therefore, to the extent that plaintiffs state a claim that Law 119 violates the Contract Clause of the United States' Constitution, defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6) is **DENIED** in part.

## V.   CONCLUSION

For the reasons expressed, the Court **GRANTS IN PART AND DENIES IN PART** defendants' motion to dismiss.  (Docket No. 48.)

Defendants' request to dismiss plaintiffs' claims for lack of standing is **DENIED.**  The motion to dismiss is **DENIED** as to plaintiffs' claims under the Due Process Clause and the Contract Clause of the United States Constitution, and those claims remain active.  The motion to dismiss is **GRANTED** as to plaintiffs' claims under the Takings Clause and the Ex Post Facto Clause of the United States Constitution.  Those claims are hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, February 23, 2012.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE