**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

UNIVERSAL INSURANCE COMPANY, *et al.*,

    **Plaintiffs,**

          **v.**                  **CIVIL NO.** 11-1968 (FAB)

DEPARTMENT OF JUSTICE, *et al.*,

    **Defendants.**

**OPINION AND ORDER**

BESOSA, District Judge.

    Before the Court is the motion for reconsideration filed by defendants Commonwealth of Puerto Rico, the Department of Justice of the Commonwealth of Puerto Rico, and, in his official capacity as Attorney General, Guillermo Somoza-Colombani (collectively, "defendants"), (Docket No. 79), and the motion for reconsideration filed by plaintiffs Universal Insurance Company, MAPFRE PRAICO Insurance Company, and Cooperativa de Seguros Multiples de Puerto Rico (collectively, "plaintiffs"), (Docket No. 84). For the reasons set forth below, defendants' motion for reconsideration is **DENIED** and plaintiffs' motion for reconsideration is **DENIED in part**.

**DISCUSSION**

**I.   Background**

On July 12, 2011, the Commonwealth of Puerto Rico Legislative Assembly ("the legislature") passed Public Law No. 119, known as the Uniform Seizure and Forfeiture Act of 2011 ("Law 119"). Law 119 establishes the rules that govern all asset forfeiture procedures in Puerto Rico. (Docket No. 26-1 at p. 1.)  It repealed Public Law No. 93 of 1988 ("Law 93"), which "granted certain Commonwealth instrumentalities the authority to seize assets used for illegal purposes."  Id.   According to the Puerto Rico legislature, the main reason for enacting Law 119 was that "multiple amendments and judicial constructions . . . have caused confusion in the implementation of [Law 93]."  Id.   Therefore, Law 119 was passed allegedly to "clarif[y] the requirements that each person must meet to challenge a seizure."  Id.

Notably, Law 119 changes the requirements for who can challenge a forfeiture.  Id.  Its Article 15 provides that "persons notified as provided in this Act and who demonstrate they are the *owners* of the property" may challenge the seizure (emphasis added). (Docket No. 26-1 at p. 7.)  An owner is "the individual who exercised dominion and control over the property in question before it was seized."  Id. at p. 2.  Article 16 then states that:

> "the plaintiff [who challenges a seizure] shall have the right to furnish a guaranty in favor of the Commonwealth of Puerto Rico . . . for the sum of the appraisal of the seized property within twenty (20) days after the complaint challenging the seizure is filed." Id. at p. 7-8.

Law 119 also allows insurance companies to challenge automobile seizures, but only on behalf of the owners. Specifically, Article 16 states that:

> "In the case of motor vehicles whose insurance policy includes a seizure endorsement, the insurance company may only file a complaint challenging the seizure *on behalf of the owner of the vehicle*, for which it shall have to furnish the guaranty provided in this article (emphasis added). Id. at p. 8.

Plaintiffs are licensed by the Office of the Insurance Commissioner to operate as insurance carriers in Puerto Rico. (Docket No. 53 at p. 1.) They provide insurance coverage to banks and other financial institutions that finance the purchase of vehicles. (Docket No. 10 at ¶ 14.) Most vehicles purchased in Puerto Rico are financed; some vehicles are leased. (Docket No. 53 at p. 1.) When a financial institution finances a vehicle, it may register its lien on the license and title of the vehicle with the Department of Transportation and Public Works. Id. Financial institutions may require an insurance policy to finance vehicles. Id. Plaintiffs state that they issue those insurance policies to cover a number of risks, including asset forfeiture. (Docket No. 10 at ¶¶ 9-11, 15.) They also assert that when an insured

vehicle is seized and then forfeited to the Puerto Rico government, plaintiffs will pay the financial institutions pursuant to their insurance contracts.  Id. at ¶ 16.  Then, plaintiffs allegedly have the right to subrogation where "the insurer is placed in the same legal position as the bank or financial institution that financed the vehicle and is entitled to recover the balance owed to the bank by the proprietor."  Id.

On September 30, 2011, plaintiffs filed a complaint for declaratory judgment and permanent injunction.  (Docket No. 1.)  On October 25, 2011, plaintiffs filed a verified amended complaint against all defendants.  (Docket No. 10.)  In their amended complaint, plaintiffs seek a declaratory judgment to declare Law 119 unconstitutional.  Id. at ¶¶ 38 and 49.  Plaintiffs argue that Law 119 prevents them from exercising their right to subrogation pursuant to their insurance policies with the financial institutions and thus, that Law 119 removes their right to challenge automobile seizures.  Id. at ¶ 36.  Plaintiffs request that defendants be permanently enjoined from enforcing Law 119 because Law 119 violates rights guaranteed by the United States Constitution.  Id. at ¶ 66.  They assert that Law 119 violates the Takings Clause and Due Process pursuant to the Fifth and Fourteenth Amendments, and the *Ex Post Facto* and the Contract Clauses

contained in Article I Section 10 of the United States Constitution. Id. at ¶¶ 38 and 49.

On November 22, 2011, defendants filed a motion to dismiss, (see Docket No. 48), which alleged that plaintiffs failed to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Defendants argued that plaintiffs (1) have no property interest in the forfeited vehicles and no injury - economic or otherwise - and therefore, have no standing to challenge the constitutionality of the statute, (2) fail to state a claim under the Takings Clause, (3) fail to state a claim for a Due Process violation, (4) fail to state a claim under the *Ex Post Facto* Clause, and (5) fail to state a claim under the Contract Clause. Id.

On November 25, 2011, plaintiffs filed an opposition to defendants' motion to dismiss. (See Docket No. 52.) Plaintiffs argued that defendants "misinterpret" plaintiffs' arguments regarding the Takings Clause and Due Process, id. at p. 2 and 8, and re-asserted that they have stated a claim for an *Ex Post Facto* Clause violation and for a Contract Clause violation, id. at p. 9.

On February 23, 2012, the Court issued an order which denied in part and granted in part defendants' motion to dismiss. The Court denied defendants' request to dismiss plaintiffs' claims for lack of standing. (Docket No. 78 at p. 39.) The Court also denied

defendants' request to dismiss plaintiffs' claims under the Due Process Clause and the Contract Clause of the United States Constitution.  Id.  The Court granted defendants' motion to dismiss plaintiffs' claims under the Takings Clause and the *Ex Post Facto* Clause of the United States Constitution.  Id.

On March 8, 2012, defendants filed a motion for reconsideration and submitted certified English translations of two cases decided by the Supreme Court of Puerto Rico.[1]  (Docket Nos. 79, 79-2, 79-4.)  Defendants requested that the Court reconsider their arguments in light of the certified English translations. (Docket No. 79 at p. 4.)  They also requested that the Court supplement their original motion to dismiss, (Docket No. 48), to include the certified translations.  Id.

On March 27, 2012, plaintiffs filed their own motion for reconsideration.  (Docket No. 84.)  Plaintiffs requested that the court reconsider their claim under the Takings Clause of the United States Constitution.  Id. at p. 1.

## II.  Motion for Reconsideration

"'The Federal Rules of Civil Procedure do not specifically provide for the filing of motions for reconsideration.'"  Sanchez-

---

[1] The Court had not considered the cases previously because they were submitted only in Spanish and they appeared to be key to the outcome of the proceedings.  48 U.S.C. § 864; Puerto Ricans for Puerto Rico Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008).

Perez v. Sanchez-Gonzalez, 717 F.Supp.2d 187, 193-94 (D.P.R. 2010)
(internal citations omitted).  Any motion for reconsideration is
usually decided pursuant to either Federal Rule of Civil Procedure
59(e) ("Rule 59(e)")[2] or Federal Rule of Civil Procedure 60(b)
("Rule 60(b)").[3]  See In re Spittler, 831 F.2d 22, 24 (1st Cir.
1987) (holding that even though the moving party did not state a
particular rule that permits its motion, "it is settled in this
circuit that a motion which asked the court to modify its earlier
disposition of case because of an allegedly erroneous legal result
is brought under Fed.R.Civ.P. 59(e)."); see also Fisher v. Kadant,
Inc., 589 F.3d 505, 512 (1st Cir. 2009).  A successful Rule 59(e)
motion requires that a party "clearly establish a manifest error of
law or [] present newly discovered evidence." Markel Am. Ins. Co.
v. Diaz-Santiago, 674 F.3d 21, 32 (1st Cir. 2012) (internal

---

[2] Rule 59(e) provides in pertinent part that:  "A motion to alter
or amend a judgment must be filed no later than 28 days after the
entry of the judgment."  Fed.R.Civ.P. 59(e).

[3] Rule 60(b) provides in pertinent part that:

    "On motion and just terms, the court may relieve a party
    or its legal representative from a final judgment, order,
    or proceeding for the following reasons:  (1) mistake,
    inadvertence, surprise, or excusable neglect; (2) newly
    discovered evidence that, with reasonable diligence,
    could not have been discovered in time to move for a new
    trial under Rule 59(b); (3) fraud . . . (4) the judgment
    is void; (5) the judgment has been satisfied, released or
    discharged; . . . (6) any other reason that justifies
    relief.

quotations and citations omitted).  The motion cannot "raise arguments which could, and should, have been made before judgment [was] issued."  Fed. Deposit Ins. Corp. v. World Univ., Inc., 978 F.2d 10, 16 (1st Cir. 1992) (internal quotations omitted).  Motions filed pursuant to Rule 59 are not "confined to the six specific grounds for relief found in Rule 60(b)."  Perez-Perez v. Popular Leasing Rental, Inc., 993 F.2d 281, 284 (1st Cir. 1993). Conversely, the Rule 60(b) standard requires that a party "demonstrate 'at a bare minimum, that his motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, he has the [ability] to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted.'"  Fisher, 589 F.3d at 512.

A motion is characterized pursuant to Rule 59(e) or Rule 60(b) based upon its filing date.  Perez-Perez, 993 F.2d at 284.  "If a motion is served within [twenty-eight][4] days of the rendition of judgment, the motion will ordinarily fall under Rule 59(e)."  Id. Motions served after twenty-eight days are considered pursuant to Rule 60(b).  Id.  It is important to determine whether the motion for reconsideration is brought pursuant to Rule 59(e) or Rule 60(b)

---

[4] A 2009 Amendment increased the filing time period from ten to twenty-eight days.  Fed.R.Civ.P. 59(e).

because a motion "for relief from judgment under Rule 60(b), unlike a motion to amend a judgment under Rule 59(e), does not toll the thirty-day appeal period." Perez-Perez, 993 F.2d at 283; see also App.R. 4(a)(4) (stating that if a party files a motion to "alter or amend the judgment under Civ.R. 59," or a motion "for relief under Civ. R. 60 if the motion is filed no later than 28 days after the judgment is entered," then "the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion").   The Court will first determine under which rule the defendants' motion should be regarded.   Then, the Court will address defendants' and plaintiffs' arguments for reconsideration in turn.

## III. Legal Analysis

### 1.   Defendants' Motion Implicates Rule 59(e)

The defendants fail to state whether they are bringing their motion pursuant Rule 59(e) or Rule 60(b).   (Docket No. 79 at pp. 2-3.)   Instead, the defendants simply state that motions for reconsideration "are generally considered under" Rule 59(e) or Rule 60(b).   (Docket No. 79 at p. 2.)   The Court issued its Opinion and Order, (Docket No. 78), on February 23, 2012, and defendants filed their motion for reconsideration, (Docket No. 79), on March 8, 2012.   Therefore, the defendants filed their motion within the twenty-eight day time period provided by Rule 59.

Fed.R.Civ.P. 59(e); see also Perez-Perez, 933 F.2d at 284 ("the litigant who gets his motion in on time enjoys the . . . relief provided by Rule 59 . . ."). Because the defendants timely filed their motion for reconsideration, Rule 59(e) is implicated for the analysis.  See id.  The Court will now address defendants' arguments for reconsideration.

2.    **Defendants' Arguments for Reconsideration**

The defendants argue that the Court "denied defendants' request to dismiss plaintiffs' claim for lack of standing in sum" because defendants cited Puerto Rico Supreme Court authority but failed to file any certified English translations pursuant to Local Rule 5(g).  (Docket No. 79 at p. 2.)  They attach two certified English translations to their motion to reconsider, (see Docket Nos. 79, 79-2, and 79-4), and urge the Court to consider the certified English translations so that it may "properly address defendants' argument as to standing and due process."  Id.  Given that the defendants have filed the certified English translations, which, they contend, "could determine whether this Court lacks jurisdiction to hear the case," (see Docket No. 79 at p. 3), the Court has reviewed the materials.  The Court, however, still finds that defendants' arguments unavailing.

a.  **Standing**

"Article III of the United States Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" <u>Valley Forge Christian Coll. v. Ams. United for Separation of Church & State</u>, 454 U.S. 464, 471 (1982).  A crucial part of the case and controversy limitation on the power of federal courts is the requirement that a plaintiff must have standing to invoke federal jurisdiction.  <u>Id.</u> at 471-73.  "[S]tanding is a threshold issue" and determines "whether the court has the power to hear the case, and whether the putative plaintiff is entitled to have the court decide the merits of the case." <u>Libertad v. Welch</u>, 53 F.3d 428, 436 (1st Cir. 1995) (internal citation omitted).  Therefore, if a plaintiff lacks standing to bring a matter to federal court, the court lacks jurisdiction to decide the merits of the case and must dismiss the complaint. <u>United States v. AVX Corp.</u>, 962 F.2d 108, 113 (1st Cir. 1992).

To establish Article III standing, plaintiffs must show that they have a "personal stake in the outcome" of the claim asserted by meeting a three-part test.  <u>Pagan v. Calderon</u>, 448 F.3d 16, 27 (1st Cir. 2006) (citing <u>Baker v. Carr</u>, 369 U.S. 186, 204 (1962)). (internal citations omitted).  <u>Id.</u>  They must show (1) "a concrete and particularized injury in fact, (2) a causal connection that permits tracing the claimed injury to defendant's actions, and

(3) a likelihood that prevailing in the action will afford some redress for the injury." Weaver's Cover Energy, LLC v. R.I. Coastal Res. Mgmt. Council, 589 F.3d 458, 467 (1st Cir. 2009) (internal quotation marks omitted).

The Supreme Court has held that the party invoking federal jurisdiction bears the burden of establishing these elements. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (internal citations omitted). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation." Id. (internal citations omitted). Thus, at the pleading or motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," because "[the courts] presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Id. (internal citation omitted).

In its motion to dismiss, defendants first argue that plaintiffs lack standing to challenge the legislation as innocent third parties. (Docket No. 48 at p. 9.) Second, defendants argue that plaintiffs have no concrete injury because they lack a property interest in the motor vehicles; defendants

argue that they "hold no property rights over the forfeited vehicles and Act 119 does not affect plaintiffs' economic interest over the lien [that] they hold [over the vehicles]." <u>Id.</u> Therefore, the defendants argue that because the plaintiffs are not interested parties, they lack standing to challenge the legislation. The Court will address each argument in turn in light of the certified English translations of the Puerto Rico Supreme Court case law cited by defendants.

### i.   Innocent Third Party Defense

The defendants contend that the Puerto Rico Supreme Court has held that an innocent third party defense is only available to the owner of the vehicle. <u>Id.</u> at p. 7 (citing <u>General Accident Ins. Co. v. Estado Libre Asociado</u>, 137 D.P.R. 466 (1994)). The Puerto Rico Supreme Court, the defendants argue, has held that insurance companies are not considered to be owners of vehicles under Puerto Rico law. <u>Id.</u> at p. 9 (citing <u>Negron Placer v. Secretario de Justicia</u>, 154 D.P.R. 79 (2001)).  Thus, even if a financial institution is notified of a forfeiture, the defendants argue that it is not entitled to raise an innocent party defense. <u>Id.</u> at p. 7.  Thus, the defendants contend, Act 119 "does not alter the fact that neither the insurance companies nor the financial institutions have standing to raise the innocent owner defense." <u>Id.</u> at p. 7.

             The Court agrees with the defendants that
plaintiffs are not the owners of the vehicles; owners of vehicles
are defined by Puerto Rico law.  See Negron Placer, 154 D.P.R. at
96 (holding that a financial entity that leased a car to an
individual is not an owner but a conditional creditor).  Thus, they
may not bring an innocent third party defense when challenging
forfeitures because an innocent third party defense is only
available to the owners of the vehicle.  See General Accident Ins.
Co. v. ELA, 137 D.P.R. at 476-77 (finding that no innocent third
party defense exists for financial entities that lease cars and
their respective insurance companies, and that the defense is only
available by "express legislative mandate.")  Furthermore, the
United States Supreme Court has stated that the Constitution does
not require an innocent owner defense but if states want to provide

such protection, they are welcome to do so.[5]  <u>See</u> <u>Bennis v.</u>
<u>Michigan</u>, 516 U.S. 442, 456-457.  Indeed, most state legislatures
have provided for an innocent owner defense.  Thus, defendants are
correct in stating that Act 119 did not alter plaintiffs' right to
raise an innocent owner defense and, therefore, the plaintiffs may
not challenge Act 119 as innocent owners.  The mere lack of an
innocent owner defense in Puerto Rico, however, does not speak to
plaintiffs' property interests in Puerto Rico nor does it speak to
whether Act 119 complies with the Due Process Clause of the United
States Constitution.

## ii.  Property Interest

The defendants next argue that the court in
<u>General Accident Ins. Co.</u> "recognized that although insurance

---

[5] The Supreme Court has held that the absence of a statutory
innocent owner defense did not violate the Due Process or Takings
Clauses of the United States Constitution because Mrs. Bennis had
the ability to challenge the trial court's "remedial discretion."
<u>See</u> <u>Bennis v. Michigan</u>, 516 U.S. 442, 444-45 (1996).  Therefore, "a
key to the avoidance of a violation of the Due Process Clause in
<u>Bennis</u> was Mrs. Bennis' ability to appeal the trial court's
discretion."  <u>Ford Motor Credit Co.</u>, 394 F. Supp. 2d at 613, n. 4,
<u>aff'd</u>, 503. F.3d 186 (2d Cir. 2007).  The lack of a statutory
innocent owner defense without any opportunity to be heard before
one's property interests are eliminated, however, may still violate
the Due Process Clause.  <u>Id.</u> (discussing how an innocent lienholder
did not have the opportunity to be heard before its property
interests were eliminated and stating that "Nothing in the Due
Process Clause permits an innocent owner's interest in property to
be forfeited without the provision of any process to the innocent
owner.")

companies have [a] property interest <u>in the lien</u> registered over the motor vehicle, they do not have [a] <u>property</u> interest <u>in the vehicles</u> they finance, <u>not being owners</u> of said vehicles." (Docket No. 48 at pp. 8-9 (citing <u>General Accident Ins. Co. v. ELA</u>, 137 D.P.R. at 477).)  The defendants also argue that "the economic and legal rights that arise from the lien are not affected" and do not "disappear[] with the forfeiture of the vehicle" because insurance companies can opt between "recuperating the vehicle or [] fil[ing] a judicial proceeding for debt collection" against the owner.  <u>Id.</u> As the Court mentioned in its first Opinion & Order, defendants contend that plaintiffs' economic interests are not at stake and no real injury is present.  (<u>See</u> Docket No. 78 at pp. 9-10.)  This "speculative injury," defendants state, "is not traceable to the letter of Act 119."  (Docket No. 48 at p. 11.)  In short, they argue that the Puerto Rico Supreme Court has held that the plaintiffs have no property interest over the vehicles they ensure, and, therefore, plaintiffs have no standing to pursue a due process challenge.  The Court finds these arguments unpersuasive.

        Defendants correctly state that property interests are "not created by the Constitution of the United States; they are created and their dimensions are defined by . . . state law." (Docket No. 48 at p. 8.)  Furthermore, they admit that "property interest[s] become[sic] protected for purposes of the due

process clause when recognized by a *state statute* or *legal contract*" (Docket No. 48 at p. 8) (citing <u>Marrero-Garcia v. Irizarry</u>, 33 F.3d 117, 121 (1st Cir. 1994) (internal citation omitted) (emphasis added).   In Puerto Rico, the Commercial Transactions Act, P.R. LAWS ANN. tit. 19 §§ 2201-2207 (1996) creates the property interest that defendants argue does not exist.   It provides that "a secured party has on default the right to take possession of the collateral" provided that it gives the debtor at least two days written notice.   <u>Id.</u> at § 2203.   Therefore, the Commercial Transactions Act provides financing institutions with right to repossess a vehicle if a lessee of the car defaults.   The defendants do not dispute this; in fact, they cite to this exact provision in their motion to dismiss.   (Docket No. 48 at p. 9.) Instead, they argue that even though repossession of the vehicle may not be available due to forfeiture to the Puerto Rico government, plaintiffs still have "the alternative of filing a debt collection case . . . against the debtor."   The defendants cite to <u>General Accident Insurance Co. v. ELA</u> and <u>Negron Placer</u> for support.   The defendants' reliance on <u>General Accident Insurance Co. v. ELA</u> and <u>Negron Placer</u>, however, is misplaced.

In <u>General Accident Insurance Co.</u>, the court only addresses whether an innocent owners' defense exists for financial institutions and their insurance companies.   137 D.P.R.

at 477.  It holds that they do not have that defense and that only the legislature may mandate otherwise.  Id. at 477-78.  In reasoning why Puerto Rico does not have an innocent owners' defense for those specific institutions, the Court in General Accident Insurance Co. does not interpret any statute about secured creditors' property interest.  It does state that the institutions' "economic interest in the lien does not disappear with" the seizure of the vehicle and that the conditional creditor "may opt between the repossession of the article or the judicial action for collection of money."  Id. at 477.  The court goes on to say that "even when the sold unit cannot be recovered, the right of the seller subsists to the action for collection of money against the purchaser for the balance owed."  Id.  It engages in this discussion only to explain why an innocent owners' defense is unnecessary in Puerto Rico.  The court in General Accident Insurance Co. makes no finding about whether these institutions have a property interest in the vehicles as lienholders.  As discussed above, the Commercial Transactions Act specifically provides that a secured creditor may collect on the property as collateral.  Because the statute allows the institutions to collect on the vehicles as collateral, it provides them with a property interest.  Law 119 would make it impossible for the financial institutions and their insurance companies to exercise on that

property interest.   Thus, under Law 119, while the "economic

interest" in the lien - the ability to collect against the

purchaser - still exists, the property interest in the lien - the

ability to collect the collateral - disappears.

          Furthermore, defendants completely misrepresent

the Negron Placer decision.   The defendants state the following in

their motion to dismiss:

> "The Supreme Court of Puerto Rico has clearly stated that
> financial institutions, and for that matter insurance
> companies that subrogate in their place, cannot use the
> forfeiture process to avoid going against the real party
> responsible for the loss of the vehicle - the *owner who
> committed an illegal act* with the property.   Negron
> Placer v. Secretario de Justicia, 154 D.P.R. 79 (2001)"
> (emphasis added).   (Docket No. 48 at p. 10.)

          The Negron Placer decision did not address any

issues with owners who committed illegal acts and were then subject

to a valid legal forfeiture of a vehicle.   Instead, in Negron

Placer, the confiscation of the vehicle was declared invalid and

the Puerto Rico government was required to return the vehicle.  154

D.P.R. at 95.   The issue was whether to return the vehicle to

Negron Placer, the conditional purchaser who was subjected to an

invalid forfeiture, or to Citibank, N.A., the financing institution

who was the conditional creditor that allegedly failed to receive

installments as agreed to in the conditional sales contract.   Id.

at 94-96.   The Negron Placer court held that after an *invalid*

forfeiture, the car must be returned to Negron Placer and that "if there existed any controversy between [her and Citibank, N.A.] regarding the financing agreement of the purchase, they had to elucidate it through the procedure provided by law for the execution of its guarantee." Id. at 96. Therefore, the Negron Placer decision does not support defendants' proposition that financial institutions "cannot use the forfeiture process to void going against . . . the owner who committed an illegal act with the property." (Docket No. 48 at p. 10.)

After examining the certified translations of the Puerto Rico Supreme Court cases cited in defendants' motion to dismiss, the Court finds the defendants' arguments regarding plaintiffs' alleged lack of property interest and concrete injury, and, therefore, a lack of standing to pursue a due process challenge unpersuasive. The Court, therefore, **DENIES** defendants' motion to reconsider these arguments. The Court's previous analysis regarding plaintiffs' standing in its February 23, 2012 Opinion and Order, (Docket No. 78 at pp. 10-11), still stands.

### b.    Due Process Clause

To establish a procedural due process claim, plaintiffs must show that (1) they had a liberty or property interest, and (2) that defendants deprived them of that interest without a constitutionally adequate process. Logan v. Zimmerman

Brush Co., 455 U.S. 422, 428 (1982); Gonzalez-Droz v. Gonzalez-

Colon, 660 F.3d 1, 13 (1st Cir. 2011) (internal citation and

quotation marks omitted); PFZ Properties, Inc. v. Rodriguez, 928

F.2d 28, 30 (1st Cir. 1991).  Defendants argue that the certified

English translations they filed will allow the Court to "properly

address defendants' arguments as to . . . due process."  (Docket

No. 79 at p. 3.)  Specifically, defendants point to the Court's

discussion of whether plaintiffs have sufficiently pled the first

requirement to establish a due process claim:  that defendants

deprived them of a liberty or property interest.  (Docket No. 79

at p. 2 and Docket No. 78 at pp. 18-19.)  The certified English

translations of the Puerto Rico case law, however, also raise

issues regarding the second prong of a procedural due process

claim:  whether defendants deprived plaintiffs of constitutionally

adequate process.  Therefore, the Court will discuss briefly the

defendants' arguments regarding property interest because the

defendants use same argument here as they did for standing.  Next,

the Court will address the issues with constitutionally adequate

process.

### i.   Property Interest

The defendants' argument regarding whether

plaintiffs had a property interest is the same argument they used

in discussing whether plaintiffs had a standing to bring the case

before the Court.  (Docket No. 78 at p. 17.)  The same reasoning,
therefore, applies to whether plaintiffs have a property interest
for purposes of due process.  Furthermore, "it is well-settled that
a lien is a constitutionally protectable property interest." Ford
Motor Credit Co. v. New York City Police Dep't., 394 F.Supp.2d 600,
611 (2d Cir. 2005) (citing Mennonite Bd. of Missions v. Adams, 462
U.S. 791, 798; Louisville Joint Stock Land Bank v. Radford, 295
U.S. 555, 594 (1935); United States v. Perry, 360 F.3d 519, 525 &
n. 4 (6th Cir. 2004); Shelden v. United States, 7 F.3d 1022, 1026
(Fed. Cir. 1993).  Therefore, in light of the English translations
of the Puerto Rico Supreme Court cases which are now on the record,
the Court finds that plaintiffs have sufficiently pled facts to
show a constitutionally protected property interest.

## ii.  Constitutionally Adequate Process

In addition to showing that they had a liberty
or property interest, plaintiffs must sufficiently plead that the
defendants   deprived   them   of   that   interest   without   a
constitutionally adequate process. Gonzalez-Droz, 660 F.3d at 13.
With regard to this second prong, plaintiffs must have the "notice
and opportunity for hearing appropriate to the nature of the case."
Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).
Due process requires an "opportunity to be heard at a meaningful
time and in a meaningful manner."  Bibiloni del Valle de Puerto

Rico, 662 F.Supp.2d 155, 182 (D.P.R. 2009) (internal citations and quotation marks omitted).

As discussed in the Court's February 23, 2012 Opinion and Order, (see Docket No. 79 at pp. 20-21), defendants argued that Law 119 "provides a procedure in order for the insurance companies to challenge the forfeiture and recover the vehicle." (Docket No. 48 at p. 18.)  The Court also discussed how plaintiffs responded that the procedure in Law 119 allows them to challenge the forfeiture on behalf of others but fails to allow them to defend their own rights and property interest.  (Docket No. 79 at p. 21.)  Based on these arguments, the Court found that plaintiffs sufficiently pled facts to show that they have been deprived of constitutionally adequate process.

The defendants only request that the Court reconsider its arguments showing how "the insurance companies failed to demonstrate a property interest at stake in this case in order to establish procedural due process claim." (Docket No. 79 at p. 3.)  They do not mention the Court's analysis regarding the second prong of a due process claim, which requires constitutionally adequate process.  (See Docket No. 79.)

Even if the defendants requested the Court to reconsider defendants' arguments about Law 119's procedure for insurance companies to challenge a forfeiture and recover a

vehicle, the Court still declines to reconsider its analysis.  As stated above, see footnote 5, the Supreme Court has held that the absence of a statutory innocent owner defense did not violate the Due Process Clause of the United States Constitution where a person had the ability to challenge the trial court's "remedial discretion." Bennis, 516 U.S. at 444-45.  The lack of a statutory innocent owner defense without any opportunity to be heard before the deprivation of one's property interests, however, may still violate the Due Process Clause.  Id.  The plaintiffs have sufficiently pled that they may not defend their own constitutionally protected property interest before it is eliminated.  Therefore, the Court maintains that at this motion to dismiss stage, without more guidance from the parties, the plaintiffs have sufficiently pled facts to show that they have been deprived of constitutionally adequate process, and the Court **DENIES** defendants' motion to reconsider its arguments regarding Due Process.

> ### 3.    **Plaintiffs' Motion Implicated Rule 60(b)**

The plaintiffs fail to state whether they are bringing their motion pursuant to Rule 59(e) or Rule 60(b).  (Docket No. 84 at p. 2.)  Like the defendants, the plaintiffs simply state that motions for reconsideration "are generally considered under" Rule 59(e) or Rule 60(b).  (Docket No. 84 at p. 2.)  The Court

issued its Opinion and Order, (Docket No. 78), on February 23,
2012, and plaintiffs filed their motion for reconsideration,
(Docket No. 84), on March 27, 2012. Therefore, they failed to file
their motion within the twenty-eight day time period provided by
Rule 59. Fed.R.Civ.P. 59(e). Because the plaintiffs failed to
file their motion for reconsideration timely pursuant to
Rule 59(e), Rule 60(b) is implicated for the analysis. See id.;
see also Fed.R.Civ.P. 60(b). The Court will now address
plaintiffs' arguments for reconsideration.

**4.   Plaintiffs' Arguments for Reconsideration**

        Plaintiffs argue that the Court erred in its dismissal of
their claim under the Takings Clause of the United States
Constitution. (Docket No. 84 at p. 2.) They do not dispute that
"the State is entitled to forfeit a vehicle that has been used in
the commission of a crime" but they do contend that the cases cited
by the Court it its February 23, 2012 Opinion and Order, (Docket
No. 78), "present different facts and controversies from those
presented in the instant case." (Docket No. 84 at p. 3.)
Plaintiffs also state that they did not raise any substantive due
process claim because "the Takings Clause provides a more
specifically applicable constitutional framework than the doctrine
of substantive due process" but that they will have to raise
arguments as a substantive due process violation if the Court does

not allow them to state a claim under the Takings Clause.  Id. at

p. 9.  The Court will address each argument in turn.

       **a.   Takings Clause**

       With regard to the Takings Clause, plaintiffs argue

that their case is distinguishable from the cases cited by the

Court.  Specifically, the plaintiffs contend that, unlike in the

cases cited by the Court, the plaintiffs here have a "prior,

legally recognized and perfected lien on the seized property" and

that the government extinguishes these liens with forfeiture.  Id.

at p. 3.  This extinguishing of their lien, the plaintiffs argue,

violates the Takings Clause.  Id.  In short, the plaintiffs contend

that the government "can only legally obtain an ownership interest

equivalent to that which belongs to the owner at the time of the

seizure." Id. at p. 5.  Therefore, the defendants are only able to

seize the vehicle subject to the lien.  Id. at p. 5.  Otherwise,

the government would be able to convert the plaintiffs' secured

interest to an unsecured one.  Id. at p. 6.  The Court agrees with

the plaintiffs but still finds that their claim under the Takings

Clause is not ripe.

       The doctrine of ripeness comes from the

Constitution's Article III requirement that federal courts may hear

only cases and controversies, and from prudential reasons for

refusing to exercise jurisdiction.   Reno v. Catholic Social

Services, Inc., 509 U.S. 43, 57 n. 18 (1993).  The Supreme Court
has held that a court must apply a two-part ripeness test when
analyzing a takings claim.  Williamson County Regional Planning
Commission v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985);
see also Pascoag Reservoir & Dam, LLC v. Rhode Island, 337 F.3d 87,
91 (1str Cir. 2003) (discussing the Williamson prerequisites that
a federal court must find before it can engage in a Takings claim
analysis).   First, a takings claim is not ripe "until the
government entity charged with implementing the regulations has
reached a final decision regarding the application of the
regulations to the property at issue."  Id. at 186.  Next, a
plaintiff stating a takings claim must have sought "compensation
through the procedures" provided for by the State.  Id. at 194.
The Williamson Court emphasized that "[i]f the [state] government
has provided an adequate process for obtaining compensation," and
a claimant receives just compensation through that process, then
the property does not have a claim against the government for a
taking.  Id.

        In this case, plaintiff clearly fails to satisfy the
second prerequisite:  the requirement that it seek compensation via
state procedures for the alleged taking, regardless of whether the
plaintiffs have shown the first prerequisite of the Williamson
test.  The defendants have shown that Article II, section 9 of

Puerto Rico's Constitution prohibits the taking of property without just compensation. (Docket No. 48 at p. 14.) Plaintiffs have not shown that they have sought compensation via state procedures or remedies and have been denied just compensation. Thus, plaintiffs' claims under the Takings Clause are unripe.

Therefore, the Court still dismisses the plaintiffs' claims pursuant to the Takings Clause. The Court will dismiss the claim, however, without prejudice as opposed to with prejudice, as it did in its February 23, 2012 Opinion and Order. (Docket No. 78 at p. 39.) Plaintiffs' motion to reconsider, (Docket No. 84), is **DENIED IN PART.**

**b.    Substantive Due Process**

Plaintiffs argues in a footnote on the last page of their motion to reconsider that they did not raise any substantive due process claims because "the Takings Clause provides a more specifically applicable constitutional framework than the doctrine of substantive due process." They then argue that "if the Court will not allow Plaintiffs' claims under the Takings clause," then "they would have to raise the argument as a substantive due process violation." Id. at p. 9. Plaintiff do not raise these claims in their original complaint and in fact, they state in their opposition to defendants' motion to dismiss that "plaintiffs' complaint is based on lack of procedural due process only."

(Docket No. 52 at p. 8.)  Plaintiffs have not attempted to develop their arguments regarding substantive due process and, therefore, the issues are waived.  United States v. Zannino, 895 F.3d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

**V.   CONCLUSION**

For the reasons expressed, the Court **DENIES** defendants' motion to reconsider, (Docket No. 79), and **DENIES IN PART** plaintiffs' motion to reconsider (Docket No. 84).  The motion to dismiss remains **DENIED** as to plaintiffs' claims for lack of standing and plaintiffs' claims under the Due Process Clause.  Plaintiffs' due process claims remain active.  The motion to dismiss remains **GRANTED** as to plaintiffs' claims under the Takings Clause, which are now **DISMISSED WITHOUT PREJUDICE.**

**An evidentiary hearing will be held on July 19, 2012 at 9:00 a.m. concerning the remaining issues in the case,** including (1) the claims that interested parties (other than owners) have made during forfeiture proceedings pursuant to the 1988 Asset Forfeiture Law and Law 119; (2) if an innocent owner's defense does not exist in Puerto Rico, the claims that interested parties (other than owners) make during a forfeiture hearing to obtain possession of the vehicle; (3) when a vehicle is sold through a forfeiture

Civil No. 11-1968 (FAB)                                                    30

proceeding, whether the vehicle is sold free and clear of a

lienholder's lien.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 22, 2012.

                                    s/ Francisco A. Besosa
                                    FRANCISCO A. BESOSA
                                    UNITED STATES DISTRICT JUDGE